## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2016, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert T. Miller
Lake Village, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of H.B., E.B., and D.B. (Minor Children) <br><br> A.B. (Father), <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner* | December 21, 2016 <br><br> Court of Appeals Case No. 56A04-1605-JT-1054 <br><br> Appeal from the Newton Circuit Court <br><br> The Honorable Jeryl F. Leach, Judge <br><br> Trial Court Cause Nos. 56C01-1507-JT-2, -3, -4 |

**Crone, Judge.**

# Case Summary

A.B. ("Father") appeals the trial court's order involuntarily terminating his parental relationship with his minor children H.B., E.B., and D.B. (collectively "the Children"). We affirm.

# Facts and Procedural History

The facts most favorable to the trial court's termination order indicate that H.B. was born in December 2001, E.B. was born in June 2005, and D.B. was born in June 2007. C.B. ("Mother")[1] is the natural mother of the Children, and Father is the natural father of the children. The Children have lived only with Mother since 2010 because Father became incarcerated following his conviction for class A felony dealing in cocaine. His projected release date is August 10, 2022.

In June 2013, the Newton County Department of Child Services ("DCS") received a report that Mother was abusing drugs, that there was a lack of food in the home, and that the Children lacked supervision. DCS received a second similar report in July 2013. Thereafter, DCS removed the Children from the home and filed petitions alleging that the Children were children in need of services ("CHINS"). On August 5, 2013, the trial court adjudicated the Children as CHINS.

---

[1] As noted later in our opinion, Mother voluntarily consented to the termination of her parental rights and does not participate in this appeal. Consequently, we decline to provide a detailed recitation of those facts relevant only to the termination of Mother's parental rights.

[4]     A dispositional decree was entered on September 13, 2013. Pursuant to the decree, Father was ordered to maintain monthly contact with DCS, visit the Children as permitted by the correctional facility, participate in services offered while incarcerated, and inform DCS of any changes in his sentence or location. The record indicates that during the pendency of the CHINS case, the Children visited with Father in prison once or twice per month, except for a year-long period during which visitation arrangements could not be made with the correctional facility. Due to Father's incarceration and the year-long lapse in contact with the Children, his relationship with the Children can be described as "distant." Tr. at 36.

[5]     At the time of their removal from the home, the Children were initially placed with their paternal grandparents. In August 2014, the Children were moved into foster care. The Children's placement within the foster care system has changed multiple times, but in May 2015, the Children were placed with their current foster family, which is a pre-adoptive placement.

[6]     In July 2015, DCS filed its petitions to terminate the parental rights of both Mother and Father. Following a factfinding hearing on December 11, 2015, the trial court found and concluded that there is a reasonable probability that the conditions that resulted in the Children's removal from and continued placement outside the home will not be remedied by either parent. Specifically, the trial court found that Mother had failed to comply with the trial court's orders for an extended period of time and had voluntarily consented to the termination of her parental rights. Regarding Father, the trial court found that

he had been incarcerated since 2010 and his earliest projected release date is in 2022. H.B. will be past the age of majority and E.B. and D.B. will be near the age of majority by the date of Father's earliest possible release.

[7] The trial court also found and concluded: (1) that there is a reasonable probability that the continuation of the parent-child relationship between the Children and both Mother and Father poses a threat to the well-being of the Children because neither parent is able to provide for the basic needs of the Children; (2) termination of the parent-child relationship between both parents and the Children is in the Children's best interests because they need stability and support that the parents are unable to provide: and (3) DCS has a satisfactory plan for the care and treatment of the Children, which is adoption by the family with whom the Children are currently placed. Accordingly, the trial court determined that DCS had proven the allegations of the petitions to terminate parental rights by clear and convincing evidence and therefore terminated Mother's and Father's parental rights. Only Father appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[8] "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.,* 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all

other reasonable efforts have failed." *Id*. A petition for the involuntary termination of parental rights must allege in pertinent part:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

…

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove each of these allegations by clear and convincing evidence. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005); Ind. Code § 31-37-14-2. If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[9] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings

of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id*. at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[10] Father asserts that DCS presented insufficient evidence to support the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal from and continued placement outside of his care will not be remedied or that continuation of the parent-child relationship between Father and the Children poses a threat to the Children's well-being. Father also challenges the sufficiency of the evidence that termination of his parental rights is in the Children's best interests. We will address his arguments in turn.

## Section 1 – The evidence supports the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal from and continued placement outside of Father's care will not be remedied.

[11] Father asserts that the evidence does not support the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal from and continued placement outside of his care will not

be remedied. In determining whether there is a reasonable probability that the conditions that led to a child's removal and continued placement outside the home would not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1231 (Ind. 2013). First, "we must ascertain what conditions led to their placement and retention in foster care." *Id.* Second, "we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id.* (citations omitted). In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.,* 989 N.E.2d at 1231). Although trial courts are required to give due regard to changed conditions, this does not preclude them from finding that a parent's past behavior is the best predictor of their future behavior. *Id.*

[12] The uncontroverted evidence indicates that Mother's neglect and substance abuse are the conditions that led to the Children's initial removal from the home and their continued placement in foster care. Although Father asserts that the Children's removal "did not have anything to do with" him, the removal occurred while Father was incarcerated. Appellant's Br. at 13. Thus, the primary condition for the Children's removal and continued placement outside the home as to Father was Father's inability to provide care and supervision for them due to his incarceration. Regarding H.B., the trial court

found that there is a reasonable probability that this condition will not be remedied because Father will remain incarcerated until his earliest possible release date in August 2022, and H.B. will be past the age of majority on that date. Regarding E.B. and D.B., the trial court found that they will be nearing the age of majority by that date. Based upon Father's undisputed inability to care for the Children at the time of the termination proceeding, and his continued incarceration for at least another seven years, the trial court found clear and convincing evidence that there is a substantial probability of future neglect or deprivation of these Children by Father.

[13] Father relies on *K.E. v. Indiana Department of Child Services.*, 39 N.E.3d 641 (Ind. 2015), to support his claim that the fact of his incarceration alone is insufficient to support a conclusion that there is a reasonable probability of non-remedy of the conditions for removal. However, *K.E.* is readily factually distinguishable from the instant case. In *K.E.*, our supreme court reversed the trial court's termination order of a father who was incarcerated at the time of the child's removal and remained so through the termination hearing. *Id.* at 647, 652. Although the father was not set to be released from incarceration for two years after the termination hearing, our supreme court found that the father had "made substantial efforts towards bettering his life" through his participation in twelve programs that were available during his incarceration that targeted parenting and life skills, along with addressing his substance abuse. *Id.* at 648-49. In addition, the father in K.E. maintained regular contact and visits with his child while incarcerated through visitation and nightly phone calls, and he

testified that he had made arrangements for housing and employment upon his release. *Id.* at 647.

[14] Here, while the evidence shows that Father has participated in some positive programs while incarcerated, we discern that none of them are specifically targeted toward parenting skills or addressing his admitted substance abuse issues. Tr. at 34. Father concedes that his relationship with the Children is "distant" due to the lack of any contact or visitation for an entire year of his incarceration. *Id*. at 36. Most significantly, Father will remain incarcerated for at least another seven years of the Children's lives. Therefore, unlike the father in *K.E.*, Father is simply unable to take steps to establish a stable life for himself upon his release, let alone for the Children. Indeed, when asked about his plans upon his release regarding his Children, Father testified, "I mean … I don't know." *Id*. at 37. In other words, Father is "obviously helpless to remedy [the conditions that led to the Children's removal] within a meaningful timeframe." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. Thus, while we recognize that "release date alone is not determinative," *see K.E.*, 39 N.E.2d at 648, it is a significant consideration in the instant case and, when coupled with the other evidence in the record, is sufficient to support the trial court's conclusion that there is a reasonable

probability that the conditions that resulted in the Children's removal and continued placement outside of Father's care will not be remedied.[2]

## Section 2 – The evidence supports the trial court's conclusion that termination of Father's parental rights is in the Children's best interests.

[15] Father also asserts that the evidence does not support the trial court's conclusion that termination of his parental rights is in the Children's best interests. In determining the best interests of a child, the trial court must look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.,* 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "In doing so, the trial court must subordinate the interests of the parent to those of the child." *Id.* Children have a paramount need for permanency, which our supreme court has deemed a central consideration in determining a child's best interests. *E.M.,* 4 N.E.3d at 647-48. Courts need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* The recommendations of the case manager and the court-appointed special advocate, in addition to evidence that there is a reasonable probability of non-remedied conditions, is

---

[2] Indiana Code Section 31-35-2-4(b)(2)(B) is written such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*. Because we have determined that sufficient evidence supports the conclusion that the conditions that resulted in the removal of the Children will not be remedied, we need not address Father's argument as to whether sufficient evidence supports the conclusion that the continuation of the parent-child relationship poses a threat to the well-being of the Children.

sufficient to show by clear and convincing evidence that termination of parental rights is in the child's best interests. *J.S.*, 906 N.E.2d at 236.

[16] Here, both the family case manager and the court-appointed special advocate opined that termination of Father's parental rights is in the Children's best interests because, due to his incarceration, Father is unable to provide for the Children or give them the stability that they need, and he will continue to be unable to do so until one of the Children is an adult and the others are older teens. Specifically, the family case manager testified that the Children have already been "in limbo" for two and a half years and that they "need to move on with their lives." Tr. at 15. Similarly, the court-appointed special advocate stated that "security is fundamental" for the Children. She noted that they had been through five placements in the last few years and that the "constant shuffling" is harmful to "their own senses of well[-]being." *Id*. at 27. She opined that leaving them in foster care would be detrimental and that they instead need a permanent "sense of belonging." *Id*. at 28. She elaborated that the Children have a strong bond with their current pre-adoptive placement.

[17] Father relies on our supreme court's opinion in *In re G.Y.,* 904 N.E.2d 1257 (Ind. 2009), to support his claim that the Children's need for permanency and stability are insufficient reasons to support the termination of his parental rights. However, as was *K.E.*, *G.Y.* is readily distinguishable from the instant case.

[18] In *G.Y.,* the incarcerated mother challenged the trial court's finding that termination was in the child's best interests based on his need for the

consistency and permanency provided by the pre-adoptive foster home in which he had resided for two years. *G.Y.*, 904 N.E.2d at 1261. In reversing the trial court's termination order, the court considered the child's general need for permanency and stability and concluded that, where the mother's release from prison was imminent and she had made remarkable efforts toward reunification while incarcerated by obtaining suitable housing and gainful employment upon her release, the evidence was insufficient to show that the child would be harmed by remaining a foster care ward until he could be reunited with his mother. *Id.* at 1265.

[19] Unlike the parent in *G.Y.*, Father has been unable to make remarkable efforts toward reunification while incarcerated as his scheduled release date is far from imminent. Indeed, H.B. will have already reached adulthood upon his earliest possible release, and E.B. and D.B. will each be close to the age of majority. DCS presented substantial evidence that the Children not only need permanency and stability, but also will be harmed by remaining in foster care for an additional seven years. The evidence, when considered in its totality, supports the trial court's conclusion that termination of Father's parental rights is in the best interests of the Children.

[20] In sum, we will reverse a termination of parental rights only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *C.A.*, 15 N.E.3d at 92-93. Based on the record before us, we cannot say that the trial court's termination of Father's parental rights to

the Children was clearly erroneous.[3] We therefore affirm the trial court's judgment.

[21] Affirmed.

Riley, J., and Altice, J., concur.

---

[3] At the conclusion of his brief, Father states that the trial court erred in denying a motion to correct error filed by his attorney. A few sentences later, he switches his characterization of this alleged motion to a motion to continue. Regardless of the characterization, Father has not included in his appendices a chronological case summary of the entire proceedings, a copy of the alleged motion, or a copy of the trial court's ruling on the alleged motion in violation of Indiana Appellate Rules 50(A)(2)(a) and (b). Moreover, other than his bald assertion of error, he fails to develop cogent argument on this issue and therefore it is waived. *See A.D.S.*, 987 N.E.2d at 1156 n.4 (parent's failure to support argument with cogent reasoning results in waiver on appeal), *trans. denied*; *see also* Ind. Appellate Rule 46(A)(8) (requiring that each contention be supported by cogent reasoning with citations to authority).